IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELISSA SUE JOHNSON, *et al.*,          *

    *Plaintiffs*,          *

v.          *          Civil Case No: 1:23-cv-0061-JMC

UNITED STATES OF AMERICA,          *

    *Defendant.*          *

   *    *    *    *    *    *    *    *    *    *    *    *

## <u>MEMORANDUM OPINION AND ORDER</u>

This medical malpractice case involves an alleged failure of Defendant's agent to diagnose necrotizing fasciitis when Plaintiff Melissa Sue Johnson presented for treatment, leading to medical complications including an above-the-knee amputation.  The Court has before it Defendant's Motion *in Limine* to exclude certain life expectancy testimony, and to preclude expert testimony as to the reasonableness of Plaintiff Melissa Sue Johnson's medical expenses.  (ECF Nos. 67 and 68).  As set forth more fully below, the Court will DENY ECF No. 67, and will GRANT in part and DENY in part ECF No. 68.

Defendant moved *in limine* to exclude certain opinion testimony from Plaintiffs' expert, Dr. Michael April, regarding Ms. Johnson's life expectancy.  (ECF No. 67).  Defendant argues that Dr. April's life expectancy opinions were not included in his original expert report at the time of his designation (such that their admission would be unfairly prejudicial), and that Dr. April's

opinions are unhelpful (and therefore inadmissible) as they provide no information beyond what is already contained in the Life Expectancy tables routinely recognized by this Court. *Id.* at 2-3.[1]

For their part, Plaintiffs argue that life expectancy has been an important and contentious issue throughout the litigation, that Plaintiffs have consistently taken the position that Ms. Johnson will have a full life expectancy notwithstanding her injuries and underlying chronic health conditions, and that Dr. April could not render his life expectancy opinion prior to Defendant's April 8, 2024 expert disclosure of Defendant's life expectancy expert Mr. Reynolds and his May 28, 2024 deposition. (ECF No. 74 at 3-4). Plaintiff also argues that Dr. April's opinions as to *why* the normal life expectancy tables apply are helpful to the factfinder, and serve as a counter to Defendant's argument regarding why a reduced life expectancy is more appropriate in this case. *Id.* at 4.

Starting with Defendant's second argument, the Court finds that the opinions of Dr. April are helpful in that they go directly to the issue of whether Plaintiff will have a normal life expectancy (consistent with the Life Tables) versus a reduced one as argued by Defendant. That is, a factfinder will need to determine whether the projections of the Life Tables have application in this case or should instead be discounted in favor of Mr. Reynolds' projections of reduced life expectancy.

On the issues of prejudice and timeliness, the Court also disagrees with Defendant. First, Defendant has a life expectancy expert in Mr. Reynolds, and so is in no way disadvantaged from presenting evidence of reduced life expectancy. Defendant's complaint, therefore, is more appropriately characterized as wanting to preclude any rebuttal as to the reasonableness of the

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

basis for Mr. Reynolds' opinion as articulated by Dr. April. Additionally, Defendant had the opportunity to depose Dr. April regarding his life expectancy opinions on July 12, 2024. Until now, Defendant has not raised any issue regarding prejudice as a result of those opinions, such as requesting a second deposition or the designation of an additional expert on life expectancy. Further, Mr. Reynolds' deposition did not take place until May 28, 2024 such that Dr. April's ability to provide full rebuttal to that opinion was necessarily delayed. Finally, although Dr. April's rebuttal to Mr. Reynold's opinions ideally would been disclosed by the June 28, 2024 rebuttal deadline, the Court notes that Dr. April's deposition date of July 12, 2024 was also the deadline for supplementation of expert testimony as required by Federal Rule of Civil Procedure 26(e)(2), (ECF No. 59), and was also well before the pretrial disclosure deadline of Rule 26(a)(3). Thus, any claimed prejudice by Defendant is harmless pursuant to Rule 37(c)(1) and the factors identified in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Company. See* 318 F.3d 592, 597 (4th Cir. 2003) ("[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation of its failure to disclose the evidence."). Accordingly, ECF No. 67 is DENED.

Defendant has also moved *in limine* to preclude expert testimony as to the reasonableness of Ms. Johnson's medical expenses based on both a failure to disclose such testimony until the deposition of Plaintiffs' experts Dr. Alexander McMeeking and Dr. Jeffrey S. Freed in July 2024, and the inadequacy of that testimony to establish the reasonableness of Plaintiff's medical

expenses. (ECF No. 68 at 2). Plaintiffs counter that Defendant has been on notice of their claim for medical expenses since the outset of the litigation, has been provided copies of the claimed medical expenses at various points during the litigation, and was free to question Drs. McMeeking and Freed at their respective depositions regarding their opinions of the reasonableness of same. (ECF No. 75 at 4-5). Plaintiffs also argue that because Medicaid paid these expenses, the Defendant should be precluded from contending that they are not reasonable given that Medicaid reimbursement is a result of a partnership between the federal and state government both of which presumably act fairly and reasonably in setting rates of reimbursement. *Id.* at 10-11.

On the issue of fair notice, it is true that neither expert's report specifically mentions that testimony will be given as to the fairness and reasonableness of medical expenses. Though both reports talk about damages, a fair reading would leave one with the assumption that the experts would be opining that the allegedly negligent treatment causing complications that made the subsequent medical interventions necessary, but perhaps not that they would be taking the further step of opining that the amounts charged for those interventions were fair and reasonable. Any such ambiguity however was easily solved at Dr. McMeeking's and Dr. Freed's subsequent depositions in July of 2024, when Defense counsel was advised that they would be rendering such opinions and took the opportunity to inquire as to same. Thus, the Court will not bar the testimony based on unfair surprise.

That said, the Court has reviewed both experts' depositions in their entirety, and reaches different conclusions as to the admissibility of each expert's opinion on this issue. As to Dr. McMeeking, an expert in internal medicine and infectious disease, he testified that he would not be offering an opinion "as an expert" as to the reasonableness of Plaintiff's medical bills. (ECF No. 68-4 at 18-19). Perhaps more fatal to Dr. McMeeking is his testimony that he made no effort

to distinguish those expenses for treatment necessitated from the alleged negligence and those that might have been incurred even in the absence of negligence based on underlying chronic medical issues. *Id*. at 19. Accordingly, Dr. McMeeking will be precluded from offering expert opinions on the issue of the reasonableness of Plaintiff's medical expenses.

By contrast, Dr. Freed, an expert in general surgery, made it clear that he does have expert opinions regarding the reasonableness of the charges for the particular services rendered, and whether such services were necessitated by the alleged negligence. (ECF No. 68-5 at 10). The basis for his opinion stems from his experience in reviewing the bills of thousands of his patients over the course of his career, such that he is familiar with the appropriate range of charges for any particular medical service. *Id*. at 15. Defense counsel was also given the opportunity to ask Dr. Freed about any particular medical bill but chose not to do so in depth. Accordingly, Dr. Freed's opinions will not be precluded.

Finally, although not fundamental to the Court's decision here, the Court finds Plaintiffs' proposal to take judicial notice of Medicaid's reimbursement rate as inherently fair and reasonable, since it is determined with oversight and input from federal and state authorities, to be an interesting one. There is a certain logic to the notion that if a government program is willing to reimburse at a particular rate, it must necessarily be fair and reasonable. At the same time, the operation of Maryland's collateral source rule is a complicating factor, since third party payors, including Government payors, are generally ignored in determining damages. Because a plaintiff's recovery is not limited by a third-party payor's reimbursement rate (Government or not), a court might be reluctant to use that rate as providing the imprimatur of reasonableness without more. As neither party has made the Court aware of a decision on the issue, the Court declines the invitation to address it now.

Accordingly, the Court shall DENY ECF No. 67, and GRANT in part (as to Dr. McMeeking) and DENY in part (as to Dr. Freed) ECF No. 68.

SO ORDERED.

Dated: <u>March 26, 2025</u>

_____ /s/ _____
J. Mark Coulson
United States Magistrate Judge